UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY HALL, | : | Case No. 3:25-CV-1074 (SVN) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. ASHRAF, | : | |
| *Defendant*. | : | **December 4, 2025** |

## INITIAL REVIEW ORDER

*Pro se* Plaintiff Jeffrey Hall, a sentenced inmate currently incarcerated at the Willard-Cybulski Correctional Institution,[1] filed this action alleging violations of his First and Eighth Amendment rights. Plaintiff brings an Eighth Amendment deliberate indifference claim against Defendant Dr. Ashraf in his individual capacity, alleging Dr. Ashraf deprived him of adequate treatment for his worsening dermatological condition. Am. Compl., ECF No. 24 at 4. Plaintiff also alleges Warden Caron retaliated against him in violation of the First Amendment by transferring him to another prison. *Id.* at 2. As relief, Plaintiff seeks injunctive relief and monetary damages. *Id.* at 4.

The Court previously construed Plaintiff's initial petition as a civil rights complaint, ECF No. 20, and conducted an initial review of that complaint, ECF No. 23. The Court dismissed Plaintiff's claims but allowed Plaintiff an opportunity to amend his complaint to correct the deficiencies. *See id.* Plaintiff filed an amended petition on October 31, 2025, *see* ECF No. 24,

---

[1] According to the Department of Correction website, Plaintiff was sentenced on April 29, 2016, to serve a maximum of twenty years in prison. *See* DOC, Inmate Locator, available at https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=397697 (last accessed December 3, 2025). The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-CV-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

and, as before, the Court construes this amended petition as an amended civil rights complaint, as it seeks injunctive relief and damages, rather than release from custody.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

## I.     FACTUAL BACKGROUND

The Court summarizes only those facts necessary to provide context for its initial review. The Court accepts the allegations in Plaintiff's amended complaint as true for purposes of this initial review order. *See Iqbal*, 556 U.S. at 678.

Plaintiff alleges that, on January 21, 2024, while housed at Carl Robinson Correctional Institute ("Carl Robinson CI"), he requested medical care because of a painful rash on his arm.

---

[2] It is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

ECF No. 24 at 2.  On January 26, 2024, the medical unit transferred him to University of Connecticut ("U. Conn.") for treatment of his now-swollen arm.  *Id.*  He alleges he experienced "severe swelling and [a] painfully itchy rash."  *Id.*  On February 11, 2024, Plaintiff wrote to medical again because the rash had spread to his other arm, and he now had open sores on both arms.  *Id.*

On February 21, 2024, after several requests, Plaintiff received a biopsy on his arm.  *Id.*  On February 29, 2024, Plaintiff was diagnosed with perivascular lymphocytic dermatitis ("PLD").  *Id.*  Dr. Ashraf told Plaintiff this condition was neither contagious nor life-threatening.  *Id.*  Dr. Ashraf prescribed him a steroid cream, along with other medications, but Plaintiff alleges these treatments did not help.  *Id.*  Plaintiff alleges he still had a "painful itch" and "pus filled open sores," but that Dr. Ashraf ignored his requests for a dermatology appointment until Plaintiff filed five grievances.  *Id.*  On August 7, 2024, Plaintiff had a video appointment with a U. Conn dermatologist, though the virtual connection was poor, so there were no advancements in his treatment as a result.  *Id.*

On November 12, 2024, Plaintiff received a second biopsy, and he received the same PLD diagnosis.  *Id.*  On March 4, 2025,  another in-person dermatologic appointment was "signed for," and that request was denied on March 28, 2025.  *Id.*  Plaintiff alleges he was not informed of this denial until May 2025.  *Id.*  On May 10, 2025, Plaintiff requested a video dermatologic appointment with U. Conn.  *Id.*  Plaintiff was transferred to a new facility, Osborn CI, on July 21, 2025.  *Id.*  After the transfer, Plaintiff was able to consult with new providers, and as of the filing of the Amended Complaint, was "undergoing a series of inoculations that have already shown some alleviation of the symptoms."  *Id.*

Plaintiff separately alleges that Warden Caron transferred him "in retaliation for filing non-frivolous" lawsuits. *Id.*

## II. DISCUSSION

The Court considers whether Plaintiff has alleged any plausible claims of constitutional violation under 42 U.S.C. § 1983.

### A. Relief Sought

Plaintiff's complaints are specific to Dr. Ashraf and Warden Caron at Carl Robinson CI, but Plaintiff is no longer at that facility. *See* DOC, Inmate Locator, available at https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=397697. Plaintiff's request for injunctive relief, *see* ECF No. 24 at 4, is therefore moot. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.").

Without a plausible claim for injunctive relief, to the extent that Plaintiff sues either Dr. Ashraf or Warden Caron in their official capacities, the claims are dismissed. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (holding that plaintiffs may only sue state officials in their official capacities to the extent that they seek non-monetary, injunctive relief).

### B. Eighth Amendment

Deliberate indifference to a prisoner's serious medical needs may constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A successful claim for deliberate indifference must satisfy both the objective and subjective components of the test. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). The objective component requires a plaintiff to

"show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). The Court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). If a plaintiff was completely deprived of medical care, courts "examine whether [his or her] medical condition is sufficiently serious." *Id.* On the other hand, if the plaintiff received medical treatment but it was inadequate, "the seriousness inquiry is narrower," and "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (alteration in original; quotation marks and citation omitted).

Whether a medical need is sufficiently serious depends on factors that include whether "a reasonable doctor or patient would find [the condition] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Under the subjective requirement, a defendant must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin*, 467 F.3d at 280 (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703.

Although Plaintiff again alleges Dr. Ashraf informed him that his diagnosis was neither contagious nor threatening to life or limb, Plaintiff adds facts in his amended complaint to support that his condition resulted in a "spreading persistent painfully itchy rash" that left him with "irreversible scar tissue" on his arms and legs. ECF No. 24 at 2. Plaintiff states he experienced "horrible suffering and constant pain" and that he had "pus-filled blistering sores" covering his arms and legs for a year and a half. *Id.* For purposes of initial review, Plaintiff has thus sufficiently alleged "chronic and substantial pain" that a reasonable doctor or patient would find "worthy of comment." *See Chance*, 143 F.3d at 702; *see also, e.g.*, *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (proof of "chronic pain" from a scar, even absent a showing of "extreme pain," was sufficient to survive summary judgment on the issue of the seriousness of inmate's condition); *but see Lewal v. Wiley,* 29 F. App'x 26, 29 (2d Cir. 2002) (summary order) (affirming dismissal based on lack of serious medical condition where the plaintiff alleged that he suffered from a slightly low red blood cell count and a persistent rash).

Plaintiff further alleges delays in treatment that may, with further factual development, support a finding that his medical care was objectively inadequate. *See, e.g.*, *Gist v. Sommer*, No. 14 CV 6736 (VB), 2020 WL 905689, at *7 (S.D.N.Y. Feb. 24, 2020) (finding objective prong met where a "delay in treatment might have exacerbated plaintiff's injuries"). Although Plaintiff was able to access some medical treatment, he alleges that the medications and steroid cream prescribed by Dr. Ashraf did not resolve the rash or the accompanying pain. ECF No. 24 at 2. Plaintiff alleges that he experienced delays of over a year in receiving effective treatment, despite submitting several written requests and administrative grievances. *See id.* (describing Plaintiff's appointment with Dr. Ashraf in February 2024 and his unsuccessful efforts to secure additional treatment until after his transfer to Osborn Correctional Institution in July 2025). During that time, Plaintiff's

rash allegedly spread to different parts of his body. At this stage, these allegations—including both the seriousness of Plaintiff's condition and the delays in receiving adequate treatment—are sufficient to satisfy the objective prong. *See, e.g.*, *Rodriguez v. Bipin*, 2023 WL 3260129, at *5–6 (N.D.N.Y. Mar. 30, 2023), *report and recommendation adopted sub nom. Rodriguez v. Bhavsar*, 2023 WL 3251522 (N.D.N.Y. May 4, 2023) (denying motion to dismiss where plaintiff alleged prescription medication was ineffective and alternative treatment was delayed).

Moreover, Plaintiff alleges facts to support the subjective component: that Dr. Ashraf knew of Plaintiff's condition but deliberately delayed his treatment, resulting in the exacerbation of that pain. *See* ECF No. 24 at 2 (alleging Dr. Ashraf knew of Plaintiff's PLD diagnosis but "ignored many of [his] written requests for some kind of treatment" and only responded to Plaintiff's request for further medical care after Plaintiff filed five grievances). If, as Plaintiff suggests, Dr. Ashraf intentionally ignored Plaintiff's requests for effective care after observing Plaintiff's rash, discussing Plaintiff's PLD diagnosis with him, and prescribing medication, such actions may rise to the level of deliberate indifference to Plaintiff's harm. *See id.*; *Salahuddin*, 467 F.3d at 281 ("[T]he official's state of mind need not reach the level of knowing and purposeful infliction of harm . . . the charged official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result").

Thus, the Court will therefore allow Plaintiff's deliberate indifference claim to proceed for further development against Defendant Dr. Ashraf in his individual capacity.

C. First Amendment Retaliation

Plaintiff also alleges that Warden Caron retaliated against him by transferring him after Plaintiff filed non-frivolous lawsuits. ECF No. 24 at 2.

"To state a First Amendment retaliation claim . . . a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir. 2009)).  Courts "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official— even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  *Id.* at 295 (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)).  That said, prison officials "may not . . . transfer [inmates] solely in retaliation for the exercise of constitutional rights."  *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989).

Here, the Court concludes that Plaintiff has alleged only "conclusory allegations of retaliatory conduct," which "are not sufficient."  *See, e.g.*, *Conquistador v. Syed*, No. 3:19-CV-1450 (KAD), 2020 WL 229319, at *3 (D. Conn. Jan. 15, 2020) (citing *Dolan*, 794 F.3d at 295).  The filing of lawsuits is protected activity.  But even if the Court assumes (without deciding) that the transfer was an adverse action, Plaintiff has not alleged any facts suggesting a causal connection between his lawsuits and the transfer.

Accordingly, as currently pleaded, Plaintiff may not proceed on his First Amendment retaliation claim against Warden Caron.

## ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his Eighth Amendment deliberate indifference claim for money damages against Defendant Dr. Ashraf in his individual capacity.

Plaintiff's First Amendment retaliation claim against the Warden is DISMISSED.

Plaintiff's requests for injunctive relief are DISMISSED.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:** (1) If Plaintiff wishes to proceed immediately **only** on the claim set forth above, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **January 5, 2025**, informing the Court that he elects to proceed with service as to the individual capacity claim against Dr. Ashraf. After Plaintiff files this notice, the Court will begin the effort to serve process on Defendant Dr. Ashraf in his individual capacity as described above.

(2) Alternatively, although Plaintiff has already once been granted leave to amend, if Plaintiff wishes to attempt to replead any of the claims asserted in his amended complaint that have been dismissed in order to attempt to state a viable claim, he may file a second amended complaint by **January 5, 2025. A second amended complaint, if filed, will completely replace the amended complaint, and the Court will not consider any allegations made in the amended complaint in evaluating a second amended complaint.** The Court will review any second amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file a second amended complaint, the amended complaint this Initial Review Order addresses will not proceed to service of process on Dr. Ashraf. The Court is not inclined to offer additional opportunities for amendment. Thus, if Plaintiff chooses to file a second amended complaint, he is encouraged to include all relevant facts related to his claims.

If the Court receives no response from Plaintiff by **January 5, 2025**, the Court will presume that Plaintiff wishes to proceed on this amended complaint as to the claim permitted to go forward

9

in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(d)(1) requires that Plaintiff **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendant or counsel for Defendant of his new address.

**SO ORDERED** at Hartford, Connecticut, this 4th day of December, 2025.

 _/s Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE